**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV10-2358-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Robert F. Smith, Sr., | |
| Defendant. | |

The United States has filed a motion for summary judgment to reduce to judgment federal tax assessments against Defendant Robert F. Smith for tax years 1999, 2000, 2001, and 2002.  Doc. 62.  The motion has been fully briefed.  Docs. 64, 69.  Mr. Smith has filed a motion to dismiss and a motion to strike government several exhibits.  Doc. 68.  This motion has also been fully briefed.  Doc. 68, 71.  The Court held oral argument on May 30, 2012.  For the reasons set forth below, the Court will grant the government's motion for summary judgment and deny Mr. Smith's motions.

**I.      Motion for Summary Judgment.**

**A.      Legal Standards.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.   The Government's Evidence.

In support of its motion for summary judgment, the government has submitted Certificates of Assessments and Payments and Other Specified Matters, known as Form 4340s, reflecting Mr. Smith's federal income tax, penalties, and interest for each of the tax years at issue.  Doc. 62-4 at 2-16 (1999), 42-49 (2000), 86-91 (2001), and 110-114 (2002).  The Ninth Circuit has held "that official documents – such as IRS forms – are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that notices and assessments were properly made."  *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992); *see United States v. Zolla,* 724 F.2d 808, 810 (9th Cir. 1984).  This holding applies to Form 4340.  *See Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir. 1992) (affirming summary judgment in favor of the United States on basis of Form 4340 where plaintiffs in quiet title action presented no evidence challenging the assessments offered in support of tax liens levied against them).

Each Form 4340 submitted by the government is signed on the last page by Certifying Officer Linda Oram Accounting Operation Manager of Ogden W&I Submission Processing, according to W&I delegation order WI-11-5,[1] and dated October 27, 2011.  *See* Doc. 62-4 at 16, 49, 91, 114.  Ms. Oram certifies each form under seal "by direction of the Secretary of Treasury."  *See* Doc. 62-4 at 2, 42, 86, 110.

Although the government argues that Form 4340 is sufficient to support its motion for summary judgment, the government has submitted additional documents in support of

---

[1] Accounting Operations Managers are authorized "to affix the official seal of the Internal Revenue Service to any certificate, or attestation required to be made in authentication of originals and copies of books, records, papers, writings and documents of the Internal Revenue Service in the custody of the Commissioner of Internal Revenue, as described in paragraph (2) of the Servicewide Delegation Order 11-5." I.R.M. 1.2.61.

the tax assessments.  For 1999 and 2000, the government has submitted copies of Mr. Smith's self-filed tax returns.  Compare Doc. 62-4 at 19, line 56, and Doc. 62-4 at 52, line 57, with Doc. 62-4 at 3 and 43.  Mr. Smith did not file tax returns for 2001 and 2002, and the government, instead, submitted copies of Information Reporting Program Transcripts "IRP transcripts" for those years.  *See* Doc. 62-4 at 69-78, 93-95.  The declaration of IRS Technical Advisor Teresa Bustos explains that IRP transcripts are retrievable computer records maintained by the IRS that contain data reported by third parties on forms such as W-2 (employee wages), 1099 (non-employee compensation), and 1098 (home mortgage interest).  Doc. 62-2, ¶ 10.  IRP Transcripts are regularly relied upon by IRS employees for carrying out official duties.  *Id.*  The government also submitted an IRP transcript for 2000, finding that Mr. Smith underreported his income in the return he filed for that year.  Doc. 62-4 at 116-17

Based on information retrieved from Mr. Smith's tax returns, the IRP transcripts, and the Form 4340 for tax years 1999, 2000, 2001, and 2002, the IRS computes Mr. Smith's outstanding tax, penalties, and interest through December 31, 2011 to be $32,111.37 for 1999 (Doc. 62-5 at 15), $79,013.18 for 2000 (Doc. 62-5 at 23), $37,122.82 for 2001 (Doc. 62-5 at 28), and $37,982.90 for 2002 (Doc. 62-5 at 32), for a total outstanding tax liability of $186,230.37.  Doc. 62-1 at 7.[2]

### C.    Defendant's Arguments.

Mr. Smith does not assert that he lacked income during the years in question, nor that he paid all of the income tax he owed for those years.  Instead, Mr. Smith alleges that the Form 4340 submitted by the government for each of the years in question contains

---

[2] The government filed a notice of errata stating that the amount should have been $189,230.27, as stated in the declaration of IRS technical advisor Teresa Bustos (Doc. 62-2 at 5).  Doc. 65.  The government then filed a second notice of errata stating that the declaration of Teresa Bustos had erroneously reported the liability for 1999 as $35,111.37 rather than the correct amount of $32,111.37, leading to the erroneous total of $189,230.27.  Doc. 67.  This error was repeated in the government's memorandum in support of its motion for summary judgment (Doc. 62-1 at 6:20) and its statement of facts.  Doc. 62-6, ¶ 26.  The Court has independently added the totals for each tax year as shown above, and has confirmed that the correct total is $186,230.27.

numerous errors and irregularities and is therefore incompetent to support the tax liability the government seeks to establish.  Doc. 64 at 34.  In support of these arguments, Mr. Smith relies almost exclusively on a series of affidavits prepared by Michael A. Bigley, whom Mr. Smith identifies as "an expert in computer programming and forensic examination of IRS computer reports."  Doc. 64 at 40.  The government asserts that Mr. Bigley's affidavits are inadmissible.   Doc. 69 at 4.   The Court will address this admissibility claim before addressing the substance of Mr. Smith's arguments.

### 1.        Admissibility of Bigley Affidavits.

Mr. Bigley's submissions consist of four affidavits regarding the government's Form 4340 for the tax years 1999, 2000, 2001, and 2002, each purportedly showing a number of errors and procedural irregularities (Smith's exhibits A, B, C, and D); an affidavit regarding the assessments for 2001 and 2002, purportedly showing erroneous assessment dates (Smith's exhibit F); and an affidavit regarding the government's exhibit 15, claiming to identify errors in the government's penalty and interest calculations for 2001 (Smith's exhibit E).  Mr. Bigley claims generally to be a computer database expert with 40 years of experience and college teaching credentials, and states that he has spent over 6,000 hours examining IRS records.  *See* Doc. 64 at 103.

The government makes four arguments for excluding Mr. Bigley's opinions: (1) his affidavits are not based on personal knowledge, (2) his opinions are not reliable because he has a history of making frivolous arguments against the IRS and he does not have the qualifications to opine about IRS procedures, (3) his affidavits go beyond the scope of his report provided in expert disclosure, and (4) the affidavits constitute improper testimony about legal principles.  Doc. 69 at 4.

The argument that Mr. Bigley's affidavits are not based on personal knowledge as required by Rule 56 appears to be premised on the fact that Mr. Bigley does not have first-hand knowledge of Mr. Smith's income or tax payments or of IRS activities in calculating the taxes due.  But Mr. Bigley does not claim to have such knowledge.  His opinions are based on IRS documents he personally examined and in which he claims to

have found calculation and other errors.  Because Mr. Bigley reviewed the documents and identified the alleged errors himself, he has sufficient personal knowledge of the matters on which he is opining to satisfy Rule 56.  The fact that he does not have personal knowledge of Mr. Smith's actual tax liabilities, and was not there when calculations were performed within the IRS, is not a basis for excluding his testimony.

The fact that Mr. Bigley allegedly has a history of making frivolous tax arguments is not a ground for excluding his opinions at this stage of the litigation.  This argument asks the Court to make a credibility determination, something it cannot do at the summary judgment stage.  The Court must view the evidence presented by the non-moving party in the light most favorable to that party.

The government's argument that Mr. Bigley lacks the qualifications to opine on IRS tax assessments presents a closer question.  Mr. Bigley does not claim to have any specialized training in income taxation or IRS procedures and regulations.  But Rule 702 does allow a witness to be qualified by experience, and Mr. Bigley claims to have spent 6,000 hours examining IRS records.  Whether this experience would qualify Mr. Bigley to provide opinions in this case depends on the nature of his examination, the documents he reviewed, and what he claims to have learned from the review.  Every citizen who prepares his or her own tax returns has spent many hours reviewing IRS documents, regulations, and guidelines, and yet that experience would not necessarily qualify such citizens to opine on the accuracy of tax assessments of other persons.  Because the nature of Mr. Bigley's document review is not addressed by the parties, the Court cannot determine whether he possesses the expertise to opine in this case under Rule 702.  Given the Court's conclusions below, however, the Court need not decide this issue in order to resolve the present motions.

The government's argument that Mr. Bigley's affidavits constitute improper expert testimony about legal principles is, in some small respects, correct.  Most of his affidavits, however, address the factual content of the government's documents and alleged errors in those documents.  The Court cannot exclude all of Mr. Bigley's opinions

on the basis of this argument.

Finally, the government argues that Mr. Bigley's opinions exceed the scope of Mr. Smith's expert disclosures.  This clearly is correct.  The expert disclosures provided by Mr. Smith assert that the IRS acted outside its statutory authority when it created substitute returns for 2001 and 2002, and generally purport to show improper use of legal terms and misapplication of the law, but they do not assert that the assessments are incorrect, nor do they disclose any of the opinions regarding the Form 4340 errors and irregularities that Mr. Bigley sets forth in response to the motion for summary judgment. Compare Doc. 39 at 4-7 with the Bigley affidavits cited above.  The Court's case management order required Mr. Smith to provide "full and complete" expert reports under Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure by August 31, 2011. Doc. 31 at 2.  Rule 26(a)(2)(B) requires that such reports contain "a *complete* statement of *all* opinions the witness will express and the basis and reasons therefor."  (Emphasis added.)  To avoid any ambiguity, the Court's case management order also expressly stated that the reports must set forth the testimony the expert witness would give in this case, together with the reasons therefor.  Doc. 31 at 3.  Mr. Bigley's disclosures (Doc. 39) clearly fail to satisfy this requirement.

Rule 37(c)(1) provides that parties who fail to comply with the Rule 26(a)(2) expert disclosure requirements cannot present the undisclosed testimony at trial or in connection with a motion unless the failure was substantially justified or harmless.  Mr. Smith's failure to disclose the Bigley opinions was not harmless.  The government did not see the opinions until discovery was closed and the government's summary judgment motion had been filed.  The government was afforded no opportunity to take discovery concerning Mr. Bigley's qualifications or opinions or to designate a counter-expert.

In an apparent attempt to argue that his lack of disclosure was substantially justified, Mr. Smith asserted at oral argument that the government presented new documents in support of its motion for summary judgment – documents that had not been disclosed before.  The documents presented by the government appear to be updated

versions of Form 4340 for each of the years in question.  Compare Doc. 62-4 at 2-16, 42-49, 86-91, and 110-115 with Docs. 15-3, 15-4, 15-5, and 15-6.  Mr. Smith did not assert that no Form 4340s had been disclosed during the litigation, nor did he explain how the new forms changed the information to which he was required to respond.  If Mr. Smith intended in this case to argue that the government's assessments are inaccurate, he could have produced expert reports by August 31, 2011 addressing that subject.  After all, Mr. Smith has been receiving communications from the IRS about his income tax assessments for years.  Then, if updated versions of Form 4340 were disclosed by the government in the summary judgment briefing, Mr. Smith could have sought leave under Rule 26(e) to provide updated expert reports.  Mr. Smith did neither.  He did not disclose the opinions asserted in the Bigley affidavits, and he never sought leave to amend his expert reports.  *See* Doc. 39.  The Court cannot conclude that Mr. Smith's complete failure to disclose the Bigley opinions can be attributed to the fact that the government provided updated copies of Form 4340.  The Court's case management order and Rule 26 are clear.  Mr. Smith did not comply with them and the Court cannot conclude that his failure is substantially justified.

Nor can the Court conclude Mr. Smith's non-disclosure was substantially justified because he is a *pro se* litigant.  Unrepresented litigants must comply with the Federal Rules of Civil Procedure.  *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997); *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1986); *Carter v. Comm'r of Internal Revenue,* 784 F.2d 1006, 1008 (9th Cir.1986).  Moreover, the expert disclosure requirements were clearly explained to Mr. Smith in the case management order as noted above, and were also explained to him in detail during the case management conference held in this case on April 15, 2011.  The Court advised Mr. Smith several times during the case management conference that he must comply with the Federal Rules of Civil Procedure.  The Court also explained that he must comply with the expert disclosure requirements of Rule 26(a)(2)(A)-(C), that he must disclose not only the name of his expert but also what opinions the expert would present, that he must make these full and

complete disclosures by August 31, 2011, and that he would not be permitted to present expert opinions that were not disclosed by the deadline. Mr. Bigley was also present in the courtroom when these matters were explained. In short, Mr. Smith had ample notice of his expert disclosure obligations, and yet completely failed to satisfy them with respect to the opinions contained in the Bigley affidavits submitted in response to the motion for summary judgment.

The Court concludes that Mr. Smith's failure to timely disclose the opinions of Mr. Bigley was neither harmless nor substantially justified. As a result, the Court will exclude the opinions under Rule 37(c)(1).

### 2.    Defendant's Objection to Form 4340.

Mr. Smith argues that there is no evidence that the Form 4340 submitted by the government for each tax year was prepared by a duly authorized delegate of the Secretary of the Treasury, that they are not sworn to by an Assessment Officer, and that there is no evidence the assessments were done properly and legally as required by 26 C.F.R. § 301.6203-1. Doc. 64 at 40. These arguments are unavailing. Each of the forms was signed on the final page by Certifying Officer Linda Oram, identified as an Accounting Operation Manager, stating that the assessment is a "true and complete transcript for the period stated" and that "all assessments, abatements, credits, refunds, and advance or unidentified payments, and the assessed balance relating thereto . . . are shown therein." *See* Doc. 62-4 at 16, 49, 91, 114. Mr. Smith has identified no specific errors in the preparation of these assessments, nor has he raised a genuine issue regarding the authority of Linda Oram to swear to their accuracy. Additionally, each assessment contains a certification under government seal signed by Ms. Oram "by direction of the Secretary of Treasury" (Form 2866) stating that it is a "true form 4340." Doc. 62-4 at 2, 42, 86, 110. The presumption of correctness that attaches to Form 4340 shifts the burden to Mr. Smith to show why the assessments are erroneous. *See Palmer v. U.S. Internal Revenue Service*, 116 F.3d 1309, 1312 (9th Cir. 1997) (stating that deficiency determinations and assessments are presumed correct if supported by a minimal factual

foundation and that the burden shifts to the taxpayer to show they are incorrect); *c.f.*, *Hardy v. Comm'r of Internal Revenue*, 181 F.3d 1002, 1004-1005 (9th Cir. 1999) (same for notices of deficiencies).  Assertions of procedural violations are generally insufficient to meet this burden absent specific facts showing errors in the assessments.  *Palmer*, 116 F.3d at 1314 (finding argument that assessments were not made by delegates of the Secretary frivolous); *United States v. Hart*, 98 A.F.T.R. 2d. 2006-7512 (D. Ariz. 2006) (finding no genuine issue of fact where defendants alleged errors in assessments without providing specific facts of their own).  Mr. Smith's unsupported allegations of procedural deficiencies and improper delegation are insufficient to overcome the presumption of correctness of the Form 4340 relied on by the government for each tax year.

Mr. Smith bases his remaining arguments on various examples from individual years scattered throughout both his response and memorandum in opposition to the government's motion.  Doc. 64 at 1-7, 33-50.  Mr. Smith provides additional and overlapping arguments for each tax year in his separate statement of facts.  Doc. 64 at 8-32.  For ease of explanation, the Court will address Mr. Smith's arguments by tax year.

### 3.    1999.

Mr. Smith admits filing a joint-return with Kathryn L. Smith on October 15, 2001, for the tax year 1999, reporting a joint and several tax liability of $18,038.  Doc. 64, ¶ 1-2.  Mr. Smith denies, however, that the Form 4340 for 1999 can be trusted.  *Id.*, ¶¶ 3-4.  He alleges a number of irregularities and errors that the government argues are not real problems.  *See* Doc. 69 at 8-9.  The Court agrees that Mr. Smith's arguments lack merit.

Mr. Smith first argues that the Form 4340 is unreliable because it lists only Mr. Smith and not both Mr. Smith and Kathryn L. Smith as liable taxpayers, and therefore does not match the assessments as recorded in the IRS Tax Module.  *Id.*, ¶ 3.  The government responds that the IRS made a separate assessment for Mr. Smith consistent with 26 U.S.C. § 6015(b), which allows for separate assessments after one spouse submits an offer in compromise, as the government asserts happened in this case.  Doc. 69 at 8; *see* Doc. 69-1, ¶¶ 6-7.  The Form 4340 for the year 1999 shows an offer in

compromise on May 10, 2011, and an entry showing that a duplicate spouse assessment was made July 18, 2011.  *See* Doc. 62-4 at 14.  Mr. Smith does not dispute that Kathryn L. Smith made an offer in compromise.  More importantly, he does not dispute that the assessment amounts on the Form 4340 are based on the Smiths' jointly-filed tax return. According to 26 U.S.C. § 6013(d)(3), "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."  26 U.S.C. § 6013(d)(3).  Because the liability is joint and several, the government can proceed against either or both of the spouses, without regard to their relative contributions to the total income.  *Garfinkle v. Comm'r of Internal Revenue*, 67 T.C. 1028, 1030 (1977); *Guth v. Comm'r of Internal Revenue*, 897 F.2d 441, 442 (9th Cir. 1996).  Mr. Smith's argument that the Form 4340 is flawed because it does not also list Kathryn Smith is therefore baseless.

Elsewhere, Mr. Smith argues that the separate assessment against him is untimely because 26 U.S.C. § 6501(a) requires the IRS to make an assessment within three years of the time a return is filed, and the separate assessment was created on May 10, 2011, more than three years after the Smiths filed their joint return.  Doc. 64 at 47.  This argument is unpersuasive because Mr. Smith does not dispute that the IRS made its initial assessment within three years of the joint return.  The Form 4340 created as a separate assessment for Mr. Smith is not a new assessment; it merely reflects Mr. Smith's separate liability for the amounts already assessed.

Mr. Smith alleges other instances of errors or false information which he identifies only by citations to the Bigley affidavit for 1999.[3]  Doc. 64 at 4; *see* Doc. 64 at 55, ¶¶ 4-6.  Mr. Bigley identifies "offer in compromise" entries and a "collection statute extension" not belonging to Mr. Smith, allegedly showing that Mr. Smith's tax file is "contaminated."  Doc. 64 at 55, ¶¶ 4-6.  These entries also do not create a genuine issue

---

[3] The Court has precluded the Bigley affidavits from evidence, but will, out of an abundance of caution, address his arguments to the extent they are incorporated into Mr. Smith's memoranda and could have been brought as factual assertions by Mr. Smith.

of material fact concerning the accuracy of the assessments.  Mr. Smith does not dispute that one of the "offer in compromise" entries pertains to Kathryn L. Smith.  As to the other entries, the affidavit of IRS technical advisor Michael J. Pryor explains that the additional "offer in compromise" entries were in error and were subsequently corrected (*see* Doc. 62-4 at 14, 15), and the "collection statute extension" entry pertains to the filing of the lawsuit which suspended the time for collecting Mr. Smith's tax liability under 26 U.S.C. § 6502(a).  Doc. 69-1, ¶¶ 8-9.  On this record, Mr. Smith has failed to raise a genuine issue that his IRS record was contaminated.

Mr. Smith also argues that the government must produce a RACS 006 Summary of Record for 1999 before the assessments can be verified.  *Id.*  This argument relates to assertions made in the Bigley affidavits for tax years 2001 and 2002, which opine that IRS regulations require that assessments first appear on a summary of assessments, known as the RACS 006 Summary of Record, before a valid assessment can be made.  *See* Doc. 64 at 105, ¶¶ 7-8.  Mr. Bigley asserts that the 2001 and 2002 entries in the RACS 006 are fraudulent because they are dated three days after the RACS 006 reports were produced.  *Id.* at 109-110, ¶¶ 30-33.  This argument also lacks merit.  As the government explained in its reply brief and at oral argument, the IRS can schedule future assessments which will show up in its documents bearing the assessment date, not the date the documents were produced.  *See* Docs. 69 at 8; 69-1, ¶ 17.  Thus, a document may be created on June 24 for an assessment on June 27.  The document will show that it was created on June 24, and will also show the assessment date of June 27.  *Id.*  As a result, even if a copy of the RACS 006 was needed to verify that a Form 4340 is credible, Mr. Smith's alleged date discrepancy fails to raise a genuine issue of fact as to whether the assessments in this case are invalid.

Mr. Smith points to a notice of federal tax lien showing that Kathryn Smith's tax liability for 1999, as of September 4, 2006, was $48,863, and claims that it constitutes evidence that Kathryn Smith filed a separate tax return for 1999 after the joint return had been filed, which Mr. Smith argues is in violation of 26 C.F.R. § 1.6013-4.  Doc. 64 at

1    11.  To the extent that Mr. Smith can prove that Kathryn Smith later filed a separate tax

2    return, this argument is irrelevant as it does not show that the separate assessment made

3    against Mr. Smith for 1999 is unreliable.

4         Mr. Smith denies that any tax is still owed for 1999 and 2000 because a Certificate

5    of Release of Federal Tax Lien issued to Kathryn L. Smith, but bearing Mr. Smith's

6    social security number, shows that the total amount owing for both years of $62,664 has

7    been paid.  Doc. 64 at 12; *see* Doc. 64 at 118-119.  The government argues that Mr.

8    Smith's unofficial copy of the lien release is inadmissible because there is no declaration

9    authenticating the document and it is not certified or under seal and is therefore not self-

10   authenticating under Federal Rule of Evidence 902.  The government also argues that the

11   lien release, even if admissible, does not provide evidence that Mr. Smith's tax liabilities

12   were satisfied.  Doc. 69 at 9.  The government relies on *Boyer v. Comm'r of Internal*

13   *Revenue*, T.C. Memo 2003-322, 86 T.C.M. (CCH) 615, 2003 WL 22725293 (2003)

14   (citing I.R.C. § 6325 and cases), which states that "[i]t is well settled that although a

15   certificate of tax lien release is conclusive that the lien is extinguished, it is not

16   conclusive that the tax liability is extinguished."  *Id.* at *3.

17        The Court agrees that a lien release is not conclusive evidence that a tax liability

18   has been paid, but the question for purposes of summary judgment is whether the lien

19   release presents a genuine issue of fact concerning the government's assessments of Mr.

20   Smith's tax liabilities.  Significantly, Mr. Smith does not make any claim to have paid his

21   1999 or 2000 tax liabilities; nor has he presented any evidence that Kathryn Smith made

22   payments for those years.  Mr. Smith asserts only that Kathryn Smith made a payment of

23   $17,118.13 that the IRS acknowledged on a certificate of discharge of property from

24   federal tax lien (*see* Doc. 64 at 117), and he argues that by law payments are to be made

25   to the oldest tax liability unless otherwise stated – here, the Smith's joint tax liability for

26   1999 and 2000.  Doc. 64 at 13.  But Mr. Smith provides no evidence that this payment

27   was intended for the Smiths' joint liability for those years.  IRS regulations state that

28   "[i]n all cases, the liability for the payment of the tax continues until satisfaction of the

tax in full or until the expiration of the statutory period for collection[.]"   26 C.F.R. § 301.6325-1(a)(1).   On the current record, Mr. Smith has failed to provide evidence of any payments made for 1999 and 2000 that would reduce his tax liability for those years, and therefore has failed to present a genuine issue of fact over whether his assessed tax liabilities for those years is correct.

Mr. Smith additionally asserts that there is a gap in payments made by levy on his social security benefits.  Doc. 64 at 12-13.  Mr. Smith cites to the Bigley affidavit, which identifies a period from May 1, 2005, to September 30, 2005, that shows no social security payments, making it "not clear if Defendant was credited with all payments taken from his SS pay."  Doc. 64 at 59, ¶¶ 20-21.  Mr. Smith states that he believes his social security records will show that the Form 4340 failed to report all payments (Doc. 64 at 13), but he has not presented the social security records or any other evidence that his social security benefits were collected by the IRS and not credited to his tax liability.  The government has submitted a Form 4340 for each of the tax years that is presumptively correct, and has additionally pointed to the affidavit of IRS technical advisor Michael Pryor stating that he has reviewed the payment history for Mr. Smith's joint tax liability for 1999 and 2000 and has found no payments or credits that are not reflected on Mr. Smith's account.  Doc. 69-1, ¶¶ 11, 21.  The party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *see* Fed. R. Civ. P. 56(e); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Mr. Smith has failed to set forth evidence of any missing payments such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The Court will grant summary judgment to the government for tax year 1999.

### 4.     2000.

Mr. Smith admits filing a joint return with Kathryn L. Smith on October 15, 2001, for the tax year 2000, and reporting a joint and several tax liability of $30,943.  Mr.

Smith objects to the reliability of the Form 4340 for 2000 for many of the same reasons the Court has addressed and rejected above with respect to 1999. *See* Doc. 64 at 13-17. The Court will address only those arguments that are unique to 2000.

In addition to the Certificate of Release of Federal Tax Lien issued to Kathryn L. Smith addressed above, Mr. Smith asserts that the tax lien against him for 2000 expired and was not re-filed and that the government has not reflected this in any of the documents presented to the Court. Doc. 64 at 14. But the fact that the government did not renew Mr. Smith's tax lien for 2000 is irrelevant to the issue of Mr. Smith's tax liability. A tax lien is not the same as a tax liability. As discussed above, release of a tax lien does not release tax liability, and does not provide proof that the tax liability has been satisfied. Mr. Smith does not claim that the tax lien was released due to payment. Nor does he present any facts showing that he paid his tax liability. Absent such a showing, the government's failure to renew a tax lien, and its failure to reflect the non-renewal in documents presented to the Court, are insufficient to present a genuine issue of fact as to whether Mr. Smith's tax liabilities for 2000 are still due.

Mr. Smith cites to the Bigley affidavit for 2000 as identifying errors and false information on the Form 4340. Doc. 64 at 16. The Bigley affidavit identifies "offer in compromise" and "collection statute extension" entries not belonging to Mr. Smith as evidence of contamination. Doc. 64 at 138-139, ¶¶ 4-6. These arguments are the same as those addressed above with respect to 1999, and the same corrections for the offer in compromise entries have been made. *See* Doc. 62-4 at 47. The Court rejects Mr. Smith's contamination argument for the reasons already stated.

Mr. Smith admits that IRP transcript data for 2000 shows unreported interest income from Merrill Lynch totaling $6,130. Doc. 64, ¶¶ 8-9. Mr. Smith declares that this income was from Kathryn Smith's account and that the notice of deficiency was sent to an address that is not his. *Id.*, ¶¶ 9-10. Importantly, Mr. Smith does not deny that Kathryn Smith received this income while they were married or that she received the notice of deficiency. *Id.* Because Mr. Smith does not dispute his joint and several tax

liability with Kathryn Smith for 2000, his arguments that the income belonged to Kathryn Smith and that he did not have personal knowledge of the deficiency are immaterial. Mr. Smith has pointed to no facts showing that the Merrill Lynch income was improperly added to the IRS assessments.

Mr. Smith raises several issues over a reported tax abatement of $99 dated October 31, 2011. Doc 64 at 11-13; *see* Doc. 62-4 at 47. The government asserts in its statement of facts that this abatement stemmed from evidence obtained from Merrill Lynch during discovery in this case. Doc. 62-6, ¶¶ 11-12. Mr. Smith's primary argument, for which he cites to the Bigley affidavit, is that there is no evidence that this abatement and a corresponding penalty abatement of $24.75 occurred in Mr. Smith's "official record." Doc. 64 at 19. Mr. Bigley's assertions to this effect are based on the fact that the Form 4340 was certified on October 27, 2011, and the date of the abatement was October 31, 2011. Mr. Bigley asserts from these different dates that the form was "fabricated by the IRS in order to deceive the Court into believing something that is not true." Doc. 64 at 71, ¶ 31. The Court has already rejected this argument and finds it without merit in light of the government's assertion – supported by the Pryor affidavit – that "IRS records show future dates of abatements, adjustments, and refunds, if those actions have been scheduled in the system." Doc. 69 at 8, *see* Doc. 69-1, ¶ 17. The Form 4340 created October 27, 2011 shows abatements scheduled to take place in the system on October 31, 2011. *Id.* Mr. Smith offers no evidence to rebut this practice of certifying abatements scheduled to take place at a future date or to support the allegations of fabrication made in the Bigley affidavit.

Mr. Smith's remaining objections regarding the abatement are equally unavailing. Mr. Smith argues that a $56.12 abatement of a late filing penalty dated November 26, 2001 is unexplained and that this provides another example of errors the IRS needed to correct but did not want to mention. Doc. 64 at 19; *see* Doc. 62-4 at 47. But the Pryor affidavit explains that this abatement relates to the same $99 tax abatement and is pre-dated to the time of the original tax assessment to ensure accurate calculation of interest

1   and accruals.  Doc. 69-1, ¶ 19.  The government acknowledged the tax abatement in its

2   statement of facts and provided documentation from Merrill Lynch as the basis for its

3   correction.  Doc. 62-6, ¶¶ 11-12; *see* 62-5 at 78-83.  In answer to the government's

4   interrogatories, Mr. Smith declaimed any knowledge regarding income received from

5   Merrill Lynch (*see* Ex. 18 at 2: 3-18), and he has failed to put forth any evidence upon

6   which a reasonable jury could conclude that the Merrill Lynch report and the IRS

7   adjustments are incorrect.

8        The Court will grant summary judgment to the government for tax year 2000.

9            **5.    2001.**

10       Mr. Smith admits that he did not file a tax return for 2001.  Doc. 64 at 21, ¶ 14.

11  He also admits receiving a notice of deficiency of $33,693 on June 15, 2004, based on an

12  analysis of his income as reported to the IRS from third parties.  *Id.*, ¶ 15.   The

13  government attests that Form 4340 shows assessments based on its initial determinations

14  in 2004, but the IRS subsequently abated some of Mr. Smith's tax liabilities, and Form

15  4340 also shows these abatements.  Doc. 69-1, ¶ 22.  Mr. Smith admits that he made no

16  payments for his 2001 taxes (Doc. 64 at 26), but he makes a number of procedural

17  objections to the IRS's preparation of his substitute return and Form 4340, and he denies

18  that the government's calculations are correct.

19       Mr. Smith first declares that the IRS did not have authority to create a substitute

20  return because the Internal Revenue Manual, which lists the returns IRS officers have

21  authority to produce, does not include 1040 returns.  Doc. 64 at 21.  This argument is

22  frivolous.  The relevant authority for preparing substitute returns is found in 26 U.S.C.

23  § 6020(b)(1):

24           [i]f any person fails to make *any* return required by *any*
             internal revenue law or regulation made thereunder at the
25           time prescribed therefor, or makes, willfully or otherwise, a
             false or fraudulent return, the Secretary shall make such
26           return from his own knowledge and from such information as
             he can obtain through testimony or otherwise.
27

28  (Emphasis added.)   Section 6020(b)(2) further states that "[a]ny return so made and

subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes."  Mr. Smith's argument that the IRS "operated ultra vires in the creation of [his] alleged tax deficiency" is without merit.

Mr. Smith challenges the reliability of the Form 4340 for 2001 based on citations to the Bigley affidavit regarding assessments for 2001 and 2002.  Doc. 64 at 22-23; *see* Doc. 64 at 102-111.   As previously discussed, the Bigley affidavit asserts that assessments must first appear on a summary of assessments – the RACS 006 Summary of Record – before a valid assessment can be made.  Doc. 64 at 105, ¶ 8.  The affidavit further asserts that no proper assessments were made for 2001 and 2002 because the RACS 006 for those years was run on November 19, 2004, but the RACS 006 summary – and the corresponding Form 4340 – shows assessment dates of November 22, 2004.  *Id.* at 109-110, ¶¶ 30-33.  As the Court has already discussed, the fact that an IRS document includes assessments scheduled to take place a few days after the document is produced is not a valid reason for discrediting those assessments.  People often prepare documents on Friday that are to have legal effect on Monday, and Mr. Smith cites no authority to suggest that the IRS cannot do the same.  Notably, the Bigley affidavit cites no evidence that the assessment amounts are in error.  *Id.*, ¶¶ 34-37.

A number of Mr. Smith's remaining objections to the Form 4340 concern a tax abatement of $18,478 made on October 31, 2011, which the government explains was made in light of documents concerning Mr. Smith's income from Hillcrest Enterprises that were obtained during discovery.  *See* Doc. 62-6, ¶¶ 17-18.  A review of Mr. Smith's IRP transcript for 2001 shows that the IRS double-counted Mr. Smith's income from Hillcrest in the amounts of $46,200 and $44,200, for a total of $90,400.  *See* Doc. 62-4 at 93.   The declaration of the government's attorney, Brian Kukso, states that the government's exhibit 19 is a true and correct copy of Mr. Smith's Form 1099-MISC from Hillcrest for 2001.  Doc. 62-3, ¶ 5.  The form shows Mr. Smith's income from Hillcrest for 2001 to be $46,200.  Doc. 62-5 at 72.  Because the IRS's original tax assessment of $33,693 was based on income of $90,400 from Hillcrest, the abatement of prior tax of

$18,478 reflects the amount Mr. Smith's taxes were reduced to correct for this overstatement.    The IRS also made corresponding abatements of $4,157.55 to the assessed late filing penalty, $725.28 to the assessed estimated tax penalty, and $4,519.50 to the assessed failure to pay tax penalty.  Doc. 69-1, ¶ 25; *see* Doc. 62-4 at 89-90.

Mr. Smith argues that the abatement date of October 31, 2011 on the Form 4340 is proof that the abatement was not properly made because it is dated after the Form 4340 was run on October 27, 2011.  Doc. 64 at 24.  This is the same argument the Court has already addressed and rejected multiple times in this order.

Mr. Smith also asserts multiple errors and mistakes on the Form 4340 which he identifies through citations to the Bigley affidavit for 2001.  Doc. 64 at 24, citing Doc. 64 at 77, ¶¶ 3-5.  Notably, Mr. Smith does not appear to dispute the factual basis for the abatement.  Mr. Smith states that the documents from Hillcrest "contain questionable items which make them non creditable documents" (Doc. 64 at 26), but he does not identify these items, nor does he provide factual evidence that the income reported by Hillcrest is incorrect.  Moreover, the portions of the Bigley affidavit to which Mr. Smith cites affirm that Mr. Smith received $44,600 in income from Hillcrest in 2001, and that the IRS overstated Mr. Smith's income by $44,200.  *See* Doc. 64 at 77, ¶¶ 3-5.  Accepting these facts, Mr. Bigley purports to show that the Form 4340 is unreliable because it does not make appropriate corrections to Mr. Smith's adjusted gross income, taxable income, self-employment tax, or additional tax assessed.  *Id.*, *Id.*, ¶ 13.

Although the Form 4340 shows corrections through abatements and does not show direct changes to the initial income and tax assessments, thus leaving the record of assessments as originally stated intact, the Court cannot conclude that this method of making corrections is flawed or that the current record shows evidence of error.  Mr. Smith has not argued that the tax abatement of $18,472 is inadequate to account for the overstatement of his assessed income by $44,200, nor has he pointed to any facts showing what he believes the proper abatement to be.  The Bigley affidavit separately calculates Mr. Smith's self-employment tax and states that his tax should have been

$6,527.85 rather than $12,391.00, but Mr. Bigley does not provide any basis for arriving at this amount, nor does he state what Mr. Smith's total tax abatement should be to correct for the misstatement of his income. The $18,472 abatement reduces Mr. Smith's tax liability from $33,693 to $15,215, or more than 50 percent, to correct for an approximate double-counting of Mr. Smith's income. Absent evidence showing that this adjustment is incorrect, Mr. Smith has failed to raise a genuine issue of fact concerning the accuracy of the $18,472 tax abatement.

Mr. Smith makes additional arguments related to the late filing penalty abatement of $725.28 and the estimated tax penalty abatement of $4,157.55 associated with the $18,472 tax abatement. First, Mr. Smith notes that Form 4340 inserts these abatements – dated November 22, 2004 – out of sequence between other entries dated June 4, 2010 and October 31, 2011. Doc. 64 at 41, *see* Doc. 62-4 at 89. Mr. Smith asserts that this is prima facie evidence that the dates are erroneous and the assessment is fabricated. Doc. 64 at 42. As explained in the declaration of IRS Technical Advisor Michael Pryor, however, the penalty abatements stem from the tax abatement made on October 31, 2011, and the abatements are back-dated to the time of the initial penalty assessments to ensure accurate calculation of interest and accruals. Doc. 69-1, ¶¶ 24-27. The fact that these entries are given assessment dates out of sequence with the entries above and below them is evidence that the IRS system dated them to ensure accurate calculations and not, as Mr. Smith argues, to defraud or fabricate.

Mr. Smith additionally argues that the Form 4340 is unreliable because the estimated tax penalty of $608.05 and the late filing penalty of $3,423.38 are disproportionately low for the tax assessed, and these amounts differ from those listed in a prior Form 4340 created June 1, 2010, showing estimated tax penalty and late filing penalty amounts of $1,333.33 and $7,580.93. Doc. 64 at 42-43, *see* Doc. 15-5 at 2-6. Mr. Smith asserts that nothing else changed to account for these changes (Doc. 64 at 43), but his own citation to the allegedly out-of-sequence abatements already discussed above shows that this is not the case. It appears that the IRS system directly adjusted the

November 22, 2004 penalty amounts by subtracting the abatements from the assessments made effective as of that date.  *See* Doc. 62-4 at 87, 89.  Thus, the $725.28 estimated tax penalty abatement accounts for the reduction of Mr. Smith's estimated tax penalty from $1,333.33 to $608.05 (compare Doc. 15-5 at 3 with 62-4 at 87), and the late filing penalty abatement of $4,157.55 accounts for the reduction of Mr. Smith's late filing penalty from $7,580.93 to $3,423.38 (*see id.*).  The Court cannot conclude, as Mr. Smith argues, that the IRS "just changed the number[s] . . . submitted to the Court" without justification.  Doc. 64 at 43.  Nor has Mr. Smith presented any factual evidence showing that the penalty abatements resulting from his $18,472 tax abatement are incorrect.

Mr. Smith argues that the interest assessed for 2001 of $5,468.68 also should have been adjusted after the $18,472 tax abatement and that no evidence exists that this was ever done.  Doc. 64 at 25; citing to Doc. 64 at 80, ¶ 14.  The Bigley affidavit to which Mr. Smith cites provides a separate calculation for what Mr. Bigley estimates Mr. Smith's interest assessment to be after reducing the $33,693 in assessed taxes by the $18,472 tax abatement.  Doc. 64 at 80, ¶ 14.  The relevant question is whether the failure to change the $5,468.68 interest assessment on the Form 4340 presents an issue of fact concerning the accuracy of the government's calculations of Mr. Smith's outstanding tax liability.  The Court concludes that it does not.

The government explained at oral argument that the interest assessment shown on a Form 4340 accurately reflects the amount of interest assessed at the time the initial interest assessment was made, and that this amount does not need to be adjusted following a tax abatement because it is not actually used in the calculation of a taxpayer's liability.  This is because interest accrues daily and the IRS relies on separate computations to determine a taxpayer's up-to-date liability.  The declaration of IRS Technical Advisor Teresa Bustos explains that the IRS retrieves tax account data from its Integrated Data Retrieval System ("IDRS") and then uses its IDRS INTST-D module to compute up-to-date interest and penalty calculations on the balances owed.  Doc. 62-2, ¶ 23.

The Court has reviewed the government's exhibit 15 showing the computations Ms. Bustos ran following this procedure for tax year 2001. The top of the page lists the assessed interest amount as $5,468.68 – the same amount shown on the Form 4340 for interest assessed on November 22, 2004. Compare Doc. 62-5 at 28 with 62-4 at 87. Where the form lists the total interest, however, the amount is $14,073.64. Doc. 62-5 at 28. This amount comes from the independent computation of interest made through December 31, 2011, shown on the computation tables in the subsequent pages of the report. Doc. 62-5 at 28-29. A review of these computation tables shows that the interest computations begin *after* the $18,478 tax abatement has been deducted from the original tax assessment of $33,693. Doc. 62-5 at 28. Thus, the first interest calculation listed on the far right column of theses tables corresponds to the corrected tax assessment on the same line – $15,215. *Id.* Adding each subsequent interest calculation in this column – which the Court did independently – produces the total interest calculation of $14,073.64. This, and not the original assessment of $5,468.68, is the amount reflected in the $37,122.82 balance due for 2001.[4] Thus, a detailed look at the records reveals that the interest actually assessed against Mr. Smith stems from his corrected tax due amount. The Court accordingly finds that no genuine issue of fact exists as to whether Mr. Smith's 2001 interest calculations properly take into account the $18,478 tax abatement.

Mr. Smith alleges two additional errors on the Form 4340 for which he also cites to the Bigley affidavit. Doc. 64 at 23, 26-27; citing Doc. 64, ¶ 17. Specifically, the entry dated June 6, 2010 lists a subsequent payment of $1 and an offer in compromise. *See* Doc. 62-4 at 89. Mr. Smith denies making either the payment or the offer in

---

[4] The total includes a tax and penalty amount of $19,245.43, plus a failure to pay penalty of $3,803.75, plus a total interest of $14,073.64: $19,245.43 + $3,803.75 + $14,073.64 = $37,122.82. The tax and penalty amount represents $15,215 in adjusted taxes, plus the adjusted estimated tax penalty of $608.05 and the adjusted estimated late filing penalty of $3,423.38, minus a subsequent payment of $1 dated June 4, 2010 (*see* Docs. 62-5 at 29, 62-4 at 89): $15,215 + $608.05 + $3,423.38 - $1 = $19,245.43. The failure to pay penalty represents the failure to pay tax penalty of $3,032.37 listed on Form 4340, page 2 (Doc. 62-4 at 88) plus $771.38, which is the difference between the original failure to pay tax penalty of $5,390.88 (*id.* at 87) and the abatement of $4,619.50 (*id.* at 90): $3,032.37 + $771.38 = $3,803.75.

compromise.  Doc. 64 at 26-27.  The government does not address this $1 entry, and the Court is unable to discern an explanation for it, but a dispute over $1 is not sufficiently material to defeat summary judgment.  As already stated, only disputes over facts that might affect the outcome of the suit will preclude summary judgment.  *Anderson*, 477 U.S. at 248.  Similarly, the offer in compromise entry, even if error, is not material because it has no effect on the amount of Mr. Smith's tax liability, which is the central fact at issue in this case.  Mr. Smith admits that he did not file a tax return for 2001, he has alleged no facts to dispute his income reported to the IRS from third parties, and he admits to paying no taxes for that year.  The Court will grant summary judgment to the government for 2001.

### 6.  2002.

Mr. Smith admits that he did not file a tax return for 2002, that he received a notice of deficiency of $16,230 based on an analysis of his income as reported by third parties, and that he made no tax payments for 2002.  Doc. 64 at 27, 30.  As with earlier years, Mr. Smith argues that the IRS acted ultra vires when it created a substitute return (*id.* at 27-28), that the run dates on the Form 4340 and the RACS 006 summary predate assessment dates and the assessment entries are therefore fraudulent (*id.* at 28-19), and that the income reported by Hillcrest cannot be trusted.  *Id.* at 29-30.  The Court has addressed and rejected these arguments above.

Mr. Smith cites new examples of alleged fraud from the Bigley affidavit for 2002.  Doc. 64 at 29; *see* Doc. 64 at 91-93, ¶¶17, 19, 20, 21, 22.  The Bigley citations relate to five entries showing tax, penalty, and interest assessments dated November 22, 2004 on the Form 4340.  *See* Doc. 62-4 at 111.  In the background section of his affidavit, Mr. Bigley states that he looks for "known indicators" that show "the IRS failed to comply with standard operating procedures, or any other evidence that would raise questions as to the validity of the data or their entry."  Doc. 64 at 86.  Mr. Bigley then identifies two dates significant to the Form 4340: the transaction date showing when an entry was made by the IRS, and the cycle postdate showing when the entry was checked for statutory

compliance and entered into the IRS master file.  *Id.* at 87.  Mr. Bigley's argument with respect to each of the entries in question is that they have transaction dates of November 22, 2004, but cycle postdates of November 11, 2004.  *See id.* at 91-93, ¶¶17, 19, 20, 21, 22.  According to Mr. Bigley, "this would indicate that the entry was changed after it was checked for compliance."  *Id.* at 87.

This argument is unsupported by any evidence that the suspect entries are wrong, or by any evidence of what the true amounts should be, and is therefore insufficient to raise a genuine issue of fact as to whether the Form 4340 has been doctored to present false information.  The tax, penalty, and interest assessments at issue derive from Mr. Smith's taxable income as calculated on the IRP transcript and shown on the statement mailed to Mr. Smith June 15, 2004.  Compare Doc. 62-4 at 117 with Doc. 62-5 at 6.  The $542.36 estimated tax penalty, $3,651.75 late filing penalty, and $16,230 additional tax assessed, all of which Mr. Bigley asserts are fraudulent entries made after the cycle postdate of November 11, 2004, each appears on the statement mailed to Mr. Smith five months earlier on June 15, 2004.  *See* Doc. 62-5 at 2, 7.  Mr. Bigley's assertion of fraud holds no water, and he provides no evidence to suggest the amounts are erroneous.

The Court will grant summary judgment to the government for tax year 2002.

**II.   Defendant Smith's Other Motions.**

On April 20, 2012, more than two weeks after responding to the government's motion for summary judgment, Mr. Smith filed "Defendant's Motion to Dismiss Due to Lack of Evidence."  Doc. 68.  Included in this motion is an attachment titled "Defendant's Motion to Strike Plaintiff's Certified Forms 4340 Exhibits 1, 3, 7, and 10." Doc. 68-1.  The government filed a response in which it argues that Mr. Smith's motion is untimely as a motion to dismiss under Rule 12(b)(6) and also fails substantively. Doc. 70 at 1-4.  The government argues that the motion to strike violates Local Rule of Civil Procedure 7.2(m), which requires that objections to evidence be filed in a responsive pleading and not by separate motion.  Doc. 70 at 4-5.  Additionally, the government argues that Mr. Smith's allegations about Form 4340 are flawed and

1    baseless.  *Id.*

2            **A.    Motion to Dismiss.**

3            Mr. Smith's motion to dismiss fails on the merits.  He puts forth a list of 54 "facts"

4    that largely rehash the arguments made in his response to the government's motion for

5    summary judgment.  Doc 68 at 6-17.  To the extent Mr. Smith raises arguments not made

6    in his earlier pleadings, these arguments also lack merit, as the Court will briefly discuss.

7            Mr. Smith repeatedly argues that the government has failed to provide evidence or

8    verification of what he owes or to identify a particular person who demands payment or

9    who will make a sworn statement that the amounts owed are correct.  *See, e.g.*, Doc. 68,

10   ¶¶ 11-15.  As shown throughout this order, however, the government has provided a

11   Form 4340 for each of the tax years in question, signed under seal by an IRS officer.  The

12   government has additionally provided computations for each year, with interest and

13   accruals calculated through December 31, 2011.  These computations have been prepared

14   and sworn to by an IRS technical advisor.  Doc. 62-2.  This lawsuit was brought on

15   behalf of the United States of America for tax liabilities owing to the IRS.  Mr. Smith's

16   contention that the government has not provided evidence of what he owes or to whom is

17   patently frivolous.

18           Mr. Smith states that the Form 4340 for each year was not certified by the Small

19   Business and Self-Employed Division within the IRS, as he claims is mandated by law in

20   order for the forms to be admissible under Rule 902.  Doc. 68, ¶ 2.  Mr. Smith does not

21   explain why certification by a different division within the IRS – in this case, the Wages

22   and Income Division – would make the forms invalid or inadmissible.  He appears

23   instead to rely on the fact that this was "[a] point submitted once before to the Court."

24   Doc. 68 at 6.  But Form 4340 is a computer-generated document based on electronic

25   records in the custody of the IRS, not documents housed within a particular division.

26   Form 4340 must be authenticated and certified according to applicable delegation orders,

27   as appears to have been done in this case.  *See* Doc. 62-4 at 2, 42, 86, 110.  Rule 902(1)

28   has been satisfied.  *See Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992) ("As

long as the document is under seal and bears an appropriate signature, Rule 902(1) is satisfied, regardless of which certifying form actually is used.").

Mr. Smith argues that the joint tax returns for 1999 and 2000 show that his wife made about twice the income he made for those years and that it is dishonest for the IRS to claim that he owes the entire debt.  Doc. 68, ¶ 17.  As previously addressed, however, the Smiths' relative contribution to the marital income for 1999 and 2000 is irrelevant because the Smiths filed joint tax returns and their tax liability is joint and several.  *See* 26 U.S.C. § 6013(d)(3).

Finally, Mr. Smith argues that he cannot be held liable for income tax because Congress has not authorized such liability.  Doc. 68, ¶¶ 38-41.  The government calls this a "time-worn tax-defier argument[]" that "courts have consistently rejected."  Doc. 70 at 4.  The Court agrees.  *See Grimes v. Comm'r of Internal Revenue*, 806 F.2d 1451, 1453 (9th Cir. 1986) (*per curiam*) (a tax on income is constitutional, "Sections 1 and 61 of the Internal Revenue Code impose a tax on income, and wages are income.").

Mr. Smith's motion to dismiss will be denied.

**B.    Motion to Strike.**

Mr. Smith moves to strike the Form 4340 produced for each tax year (exhibits 1, 3, 7, and 10 of the government's motion for summary judgment) based on allegations of errors and flaws which he claims he will support with his exhibits A, B, C, and D, a reference to the Bigley affidavits already addressed in this order.  Doc. 68-1 at 1.  The motion to strike, filed more than two weeks after Mr. Smith's response to the government's motion for summary judgment, is untimely and improperly submitted under Federal and Local Rules.  *See* Fed. R. Civ. P. 12(f); LRCiv 7.2(m)(2) ("[a]n objection to the admission of evidence . . . must be presented in the objecting party's responsive or reply memorandum . . . and not in a separate motion to strike or other separate filing.").  Mr. Smith was advised of these rules when the Court denied his earlier motion to strike.  *See* Doc. 48 at 1-2.  Moreover, Mr. Smith's motion to strike fails on the merits because the Ninth Circuit has made clear that a Form 4340 that is certified under

seal is admissible under Federal Rule of Evidence 902. *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992). The motion to strike will be denied.

### C.     Motion to Compel.

Mr. Smith filed a motion on May 16, 2012, titled "Defendant's Response to United States' Objection for Production of Documents." Doc. 72. The motion does not identify a discovery request for which Mr. Smith seeks enforcement. It appears from the motion that Mr. Smith asked the government to provide certain "IMF Records," and the government denied his request as duplicative, exceeding the permitted number, and untimely. Doc. 72 at 2-4.

To the extent Mr. Smith asks the Court to settle a discovery dispute, the Court's case management order clearly stated that "absent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery," which in this case was October 28, 2011. Doc. 31 at 2. Mr. Smith has not claimed that extraordinary circumstances kept him from raising this issue earlier. Mr. Smith does state that the government produced new copies of Form 4340 with its summary judgment motion on March 1, 2012 (Doc. 72 at 2), but if this is his reason for requesting new documents, Mr. Smith should have raised this issue as part of the summary judgment briefing, not more than two and one-half months after the motion for summary judgment was filed.

Mr. Smith also requests that the Court grant him authority to subpoena IMF records pertaining to Kathryn L. Smith. *Id.* at 2, 4. To the extent Mr. Smith seeks documents he has not previously requested, this request is also untimely. The discovery period closed on October 28, 2011. Doc. 31 at 2. Mr. Smith could have made this request while discovery was permitted, and therefore cannot show good cause to extend the discovery deadline. *See* Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir.1992); *Wong v. Regents of the Univ. of Cal.,* 410 F.3d 1052, 1062 (9th Cir.2005). The motion will be denied.

**D.     Motion to Accept Additional Material.**

Mr. Smith filed a motion on June 1, 2012, almost two months after responding to the government's motion for summary judgment, requesting permission to submit additional material in the form of an affidavit and RACS 006 Report for tax years 1999 and 2000.  Doc. 75 at 1-2.  Mr. Smith explains that he just received the RACS 006 Report on May 25, 2012, pursuant to a FOIA request.  *Id.* at 2.  Mr. Smith states that he made the FOIA request on April 10, 2012, and requested the same information from Plaintiff on April 6, 2012.  Thus, Mr. Smith did not even request this material until after he filed his response to the government's motion for summary judgment on April 5, 2012.

A noted above, Mr. Smith has failed to show good cause for extending the discovery period in this case.  He could have obtained this information while discovery was permitted, seeking the Court's assistance if necessary.  Mr. Smith provided a similar Affidavit and RACS 006 Report for tax years 2001 and 2002 in his pleadings, showing that he was aware of how to obtain and submit such materials in support of his response.  To permit him to introduce new factual material long after the discovery period has closed and summary judgment briefing has been completed would be unduly prejudicial to the government and clearly inconsistent with the Court's case management order.  The motion will be denied.

**IT IS ORDERED:**

1.     The government's motion for summary judgment (Doc. 62) is **granted**.  As part of this ruling, the Bigley affidavits are excluded under Rule 37(c)(1).

2.     Judgment will be entered in favor of the IRS and against Defendant Robert F. Smith, Sr. in the amount of **$186,230.37** for tax years 1999, 2000, 2001, and 2002, with interest and penalties to accrue until paid in full.  The IRS shall submit a form of judgment by **June 29, 2012**.

3.     Defendant Smith's motion to dismiss and motion to strike (Doc. 68), motion to compel (Doc. 72), and motion to accept additional materials (Doc. 75) are **denied**.

Dated this 18th day of June, 2012.

_David G. Campbell_
United States District Judge